**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| REGIONAL JUSTICE INFORMATION SERVICES COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 4:16-CV-00275-CDP |
| vs. | ) ) ) | |
| REGIONAL JUSTICE INFORMATION SERVICES, INC., INFORMATION TECHNOLOGIES, INC., MICHAEL KREBS and DAVID LOMMEL, | ) ) ) ) | **DEMAND FOR JURY TRIAL** |
| Defendants. | ) ) ) | |
| REGIONAL JUSTICE INFORMATION SERVICES, INC., INFORMATION TECHNOLOGIES, INC., MICHAEL KREBS and DAVID LOMMEL, | ) ) ) ) ) | |
| Counterclaim Plaintiffs, | ) ) | |
| vs. | ) ) ) | |
| REGIONAL JUSTICE INFORMATION SERVICES COMMISSION, | ) ) ) | |
| Counterclaim Defendant, | ) ) | |

<u>**DEFENDANT INFORMATION TECHNOLOGIES, INC.'S AMENDED ANSWER,
AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO PLAINTIFF'S FIRST
AMENDED PETITION**</u>

COMES NOW Defendant, Information Technologies, Inc. ("Defendant"), by and through

its undersigned attorneys, and for its Amended Answer and Affirmative Defenses to Plaintiff's

First Amended Petition (hereinafter referred to as "Plaintiff's Petition") states:

1.     Defendant admits that Plaintiff Regional Justice Information Services Commission is bringing an action against Defendant.  Defendant otherwise denies the remaining allegations contained in paragraph 1 of Plaintiff's Petition.

.     2.     Defendant denies the allegations contained in paragraph 2 of Plaintiff's Petition.

**JURISDICTION AND VENUE**

3.     Defendant denies the allegations contained in paragraph 3 of Plaintiff's Petition.

**PARTIES AND SERVICE**

4.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of Plaintiff's Petition and, therefore, denies the allegations.

5.     Defendant admits that Information Technologies, Inc. is a Missouri Corporation, incorporated on January 3, 1989 by David Lommel, with current place of business located at 10430 Baur Blvd., St. Louis, Missouri 63132, in St. Louis County.  Defendant otherwise denies the remaining allegations contained in paragraph 5 of Plaintiff's Petition.

6.     Defendant admits Regional Justice Information Service, Inc. is a Missouri corporation that was incorporated on August 6, 2012, with business address in St. Louis County.  Defendant otherwise denies the remaining allegations contained in paragraph 6 of Plaintiff's Petition.

7.     Defendant admits that David Lommel resides in Missouri, and is President of Information Technologies, Inc. and Regional Justice Information Service, Inc.   Defendant otherwise denies the remaining allegations contained in paragraph 7 of Plaintiff's Petition.

8.     Defendant admits that Michael Krebs resides in Missouri, and is Information Technologies, Inc.'s corporate Secretary, and is the incorporator and corporate Secretary of

Regional Justice Information Service, Inc.  Defendant otherwise denies the remaining allegations contained in paragraph 8 of Plaintiff's Petition.

      9.     Defendant denies the allegations contained in paragraph 9 of Plaintiff's Petition.

      10.    Defendant denies the allegations contained in paragraph 10 of Plaintiff's Petition.

      11.    Defendant denies the allegations contained in paragraph 11 of Plaintiff's Petition.

## ALLEGATIONS COMMON TO ALL COUNTS

      12.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of Plaintiff's Petition and, therefore, denies the allegations.

      13.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of Plaintiff's Petition and, therefore, denies the allegations.

      14.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of Plaintiff's Petition and, therefore, denies the allegations.

      15.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of Plaintiff's Petition and, therefore, denies the allegations.

      16.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of Plaintiff's Petition and, therefore, denies the allegations.

      17.    Defendant admits paragraph 17 of Plaintiff's Petition.

      18.    Defendant denies the allegations contained in paragraph 18 of Plaintiff's Petition.

19.     Defendant denies the allegations contained in paragraph 19 of Plaintiff's Petition.

20.     Defendant denies the allegations contained in paragraph 20 of Plaintiff's Petition.

21.     Defendant denies the allegations contained in paragraph 21 of Plaintiff's Petition.

22.     Defendant denies the allegations contained in paragraph 22 of Plaintiff's Petition.

23.     Defendant denies the allegations contained in paragraph 23 of Plaintiff's Petition.

24.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of Plaintiff's Petition and, therefore, denies the allegations.

25.     Defendant denies the allegations contained in paragraph 25 of Plaintiff's Petition.

## COUNT I – Declaratory Judgment

26.     Defendant re-alleges and incorporates by this reference, as if the same were fully stated herein, each and every one of its answers to paragraphs 1 through 25 of Plaintiff's Petition as paragraph 26 herein.

27.     Defendant denies the allegations contained in paragraph 27 of Plaintiff's Petition.

28.     Defendant denies the allegations contained in paragraph 28 of Plaintiff's Petition.

29.     Defendant denies the allegations contained in paragraph 29 of Plaintiff's Petition.

30.     Defendant denies the allegations contained in paragraph 30 of Plaintiff's Petition.

## COUNT II – Request for Injunctive Relief

31.     Defendant re-alleges and incorporates by this reference, as if the same were fully stated herein, each and every one of its answers to paragraphs 1 through 30 of Plaintiff's Petition as paragraph 31 herein.

32.     Defendant denies the allegations contained in paragraph 32 of Plaintiff's Petition.

33.     Defendant denies the allegations contained in paragraph 33 of Plaintiff's Petition.

34.     Defendant denies the allegations contained in paragraph 34 of Plaintiff's Petition.

35.     Defendant denies the allegations contained in paragraph 35 of Plaintiff's Petition.

36.     Defendant denies the allegations contained in paragraph 36 of Plaintiff's Petition.

## COUNT III – Unfair Competition

37.     Defendant re-alleges and incorporates by this reference, as if the same were fully stated herein, each and every one of its answers to paragraphs 1 through 36 of Plaintiff's Petition as paragraph 37 herein.

38.     Defendant denies the allegations contained in paragraph 38 of Plaintiff's Petition.

39.     Defendant denies the allegations contained in paragraph 39 of Plaintiff's Petition.

40.     Defendant denies the allegations contained in paragraph 40 of Plaintiff's Petition.

41.     Defendant denies the allegations contained in paragraph 41 of Plaintiff's Petition.

42.     Defendant denies the allegations contained in paragraph 42 of Plaintiff's Petition.

43.     Defendant denies the allegations contained in paragraph 43 of Plaintiff's Petition.

44.     Defendant denies the allegations contained in paragraph 44 of Plaintiff's Petition.

45.     Defendant denies the allegations contained in paragraph 45 of Plaintiff's Petition.

## COUNT IV – Common Law Trademark Infringement

46.     Defendant re-alleges and incorporates by this reference, as if the same were fully stated herein, each and every one of its answers to paragraphs 1 through 45 of Plaintiff's Petition as paragraph 46 herein.

47.     Paragraph 47 of Plaintiff's Petition asserts legal conclusions to which no answer is required.

48.     Defendant denies the allegations contained in paragraph 48 of Plaintiff's Petition.

49.     Defendant denies the allegations contained in paragraph 49 of Plaintiff's Petition.

50.     Defendant denies the allegations contained in paragraph 50 of Plaintiff's Petition.

51.     Defendant denies the allegations contained in paragraph 51 of Plaintiff's Petition.

52.     Defendant denies the allegations contained in paragraph 52 of Plaintiff's Petition.

## COUNT V – Dilution of Mark – Missouri Statute

53.     Defendant re-alleges and incorporates by this reference, as if the same were fully stated herein, each and every one of its answers to paragraphs 1 through 52 of Plaintiff's Petition as paragraph 53 herein.

54.     Defendant denies the allegations contained in paragraph 54 of Plaintiff's Petition.

55.     Defendant denies the allegations contained in paragraph 55 of Plaintiff's Petition.

56.     Defendant denies the allegations contained in paragraph 56 of Plaintiff's Petition.

57.     Defendant denies the allegations contained in paragraph 57 of Plaintiff's Petition.

## COUNT VI – Section 43(a) Lanham Act Violation

58.     Defendant re-alleges and incorporates by this reference, as if the same were fully stated herein, each and every one of its answers to paragraphs 1 through 57 of Plaintiff's Petition as paragraph 58 herein.

59.     There are no allegations contained in paragraph 59 of Plaintiff's Petition, merely a citation to federal statute to which no answer is required.

60.     Defendant denies the allegations contained in paragraph 60 of Plaintiff's Petition.

61.     Defendant denies the allegations contained in paragraph 61 of Plaintiff's Petition.

62.     Defendant denies the allegations contained in paragraph 62 of Plaintiff's Petition.

63.     Defendant denies the allegations contained in paragraph 63 of Plaintiff's Petition.

64.     Defendant denies the allegations contained in paragraph 64 of Plaintiff's Petition.

65.     Defendant denies the allegations contained in paragraph 65 of Plaintiff's Petition.

## COUNT VII – Dilution of Mark – Lanham Act

66.     Defendant re-alleges and incorporates by this reference, as if the same were fully stated herein, each and every one of its answers to paragraphs 1 through 65 of Plaintiff's Petition as paragraph 66 herein.

67.     Defendant denies the allegations contained in paragraph 67 of Plaintiff's Petition.

68.     Defendant denies the allegations contained in paragraph 68 of Plaintiff's Petition.

69.     Defendant denies the allegations contained in paragraph 69 of Plaintiff's Petition.

70.     Defendant denies the allegations contained in paragraph 70 of Plaintiff's Petition.

71.     Defendant denies the allegations contained in paragraph 71 of Plaintiff's Petition.

72.     Defendant denies the allegations contained in paragraph 72 of Plaintiff's Petition.

## COUNT VIII – Civil Conspiracy and Collusion

73.     Defendant re-alleges and incorporates by this reference, as if the same were fully stated herein, each and every one of its answers to paragraphs 1 through 72 of Plaintiff's Petition as paragraph 73 herein.

74.     Defendant denies the allegations contained in paragraph 74 of Plaintiff's Petition.

75.     Defendant denies the allegations contained in paragraph 75 of Plaintiff's Petition.

76.     Defendant denies the allegations contained in paragraph 76 of Plaintiff's Petition.

77.     Defendant denies the allegations contained in paragraph 77 of Plaintiff's Petition.

## AFFIRMATIVE DEFENSES

1.     Plaintiff has no protectable interest in the trade names at issue.   Plaintiff's trade names are not protectable as common-law trademarks since they are not used to identify a product or service, but merely identify an alleged quasi-governmental entity.

2.     Plaintiff has misused its alleged trademarks by engaging in anticompetitive conduct with the intent to monopolize the market for justice information services in violation of the Sherman Act and such conduct caused injury to Defendant.

3.     Plaintiff has misused its alleged trademarks through deceit, unconscionability and/or bad faith, resulting in harm to the public, and therefore Plaintiff's actions against Defendant are barred by unclean hands.

4.     Plaintiff has misused its alleged trademarks through deceit, unconscionability and/or bad faith, resulting in harm to Defendant, and therefore Plaintiff's actions against Defendant are barred by unclean hands.

5.     Plaintiff unreasonably delayed bringing action against Defendant, causing prejudice to Defendant, and such delayed action is barred by the doctrine of latches.  Plaintiff failed to exercise diligent protection of its alleged rights that a prudent business person would exercise.  Plaintiff knew or should have known of Defendant's incorporation of Regional Justice Information Service, Inc. in 2012, and, furthermore, Plaintiff was made aware of Defendant's alleged use of Regional Justice Information Service, Inc. by its own customers.

6.     Plaintiff unreasonably delayed bringing action against Defendant through intentional misleading silence, upon which Defendant relied to Defendant's detriment, and such delayed action is barred by equitable estoppel.

7.     Plaintiff does not hold any Federal or State trademark or fictitious name registration of the name "REJIS" or "Regional Justice Information Services" and therefore has no claim of confusion or dilution of mark under federal or state law.

8.     Defendant's alleged use of the name "REJIS" or "Regional Justice Information Services" is neither misleading or deceptive.

9.     Plaintiff's First Amended Petition fails to state any claim upon which relief may be granted for the following reasons:

a.  Plaintiff does not state a claim for declaratory relief.  Plaintiff's First Amended Petition fails to set forth facts establishing (1) the existence of a justiciable controversy and (2) that the plaintiff has no adequate remedy at law.  Plaintiff's First Amended Petition for declaratory relief does not present a controversy ripe for judicial determination.

b.  Plaintiff does not state a claim for injunctive relief.  Plaintiff's First Amended petition against Defendant for injunctive relief states only conclusions and contains no ultimate facts which support those conclusions.

c.  Plaintiff does not state a claim for unfair competition.  Plaintiff's First Amended Petition fails to demonstrate either actual or probable deception, or whether Defendant's acts are such as are calculated to deceive the ordinary buyer making his purchases under the ordinary conditions which prevail in the particular trade to which the controversy relates.

d.  Plaintiff does not state a claim for common law trademark infringement.  Plaintiff's First Amended Petition fails to demonstrate that Defendant unfairly used Plaintiff's name or a simulation of it to the prejudice of Plaintiff's interests.

e.  Plaintiff does not state a claim for dilution of mark pursuant to 417.061(1) R.S.Mo.   Plaintiff's First Amended Petition fails to demonstrate that Defendant is using the same or similar mark or trade name of Plaintiff.

f.  Plaintiff does not state a cause of action under section 43(a) of the Lanham

Act.  Plaintiff's First Amended Petition fails to demonstrate that Defendant is using in commerce any word, term, name, symbol or device or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact which is like to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of goods, services or commercial activities by another person.

g.   Plaintiff has failed to state a cause of action for civil conspiracy and collusion. Plaintiff's First Amended Petition fails to demonstrate that Defendant was involved in a civil conspiracy with the other defendants, much less committed an act of furtherance of a conspiracy.

10.    Plaintiff has failed to mitigate its damages and any such damages alleged by Plaintiff are subject to all applicable legal caps and limitations.

11.    Plaintiff's own conduct, as well as other conduct and events, contributed in whole or in part to its alleged damages.

12.    Plaintiff's claims are barred by the doctrine of waiver.

13.    Defendant's actions were not intentional, willful, deliberate, deceptive, wanton, malicious and/or outrageous, or with evil motive or with reckless indifference to the rights of the Plaintiff.

14.    Plaintiff is not entitled to attorneys' fees and/or costs.

10

15.     Superseding and intervening causes, over which Defendant had no control, caused or contributed to Plaintiff's alleged damages, thus relieving Defendant from any liability for damages.

16.     Any award of punitive damages beyond a nominal sum pursuant to any of the claims alleged in Plaintiff's Petition would deny Defendant its constitutional rights, both facially and as applied in this case, protected by any one or more of the excessive fines clause, the takings clause, the due process clause, and the equal protection of laws clause of either the United States Constitution or the Missouri Constitution, or both.  See U.S. Constitution Article I, Section 8, Amendments IV, V, VIII, XIV; Missouri Constitution Article I, Sections 2, 21, and 28.

17.     Any award of punitive damages beyond a nominal sum based upon any of the claims alleged in Plaintiff's Petition would violate Missouri common law, the due process provisions of the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Missouri Constitution, and the excessive fines clause of the Eighth Amendment to the United States Constitution and Article I, Section 21 of the Missouri Constitution.  Any such award would far exceed any amount necessary to punish Defendant and to deter others from similar conduct.

18.     Any award of punitive damages beyond a nominal sum against Defendant would impose a criminal fine based upon undefined conduct and without regard to Defendant's mental state with insufficient notice to Defendant that such conduct could produce punishment in the form of punitive damages in violation of Article I, sections 2, 10, 13, 14, and 21 of the Missouri Constitution and the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.  Such a punitive damages award, moreover, would expose Defendant to an

indeterminate penalty without definite standards governing the discretion of the fact-finder to determine the severity of the punishment.  Thus, the absence of proper standards for the imposition of a criminal fine in the form of such punitive damages violates Defendant's substantive and procedural due process rights under federal and state law.  It further undermines the Missouri and United States Constitution's prohibitions against excessive fines, deprives Defendant of equal protection of the law, constitutes a prohibited ex post facto law, impairs rights of contract, and constitutes an uncertain remedy.

19.     Defendant reserves the right to plead and assert additional affirmative defenses when facts and law supporting said affirmative defenses become known and available to Defendant in the future.

## JURY TRIAL DEMAND

Defendant demands a jury trial in accordance with Federal Rule of Civil Procedure 38.

WHEREFORE, having fully responded to Plaintiff's Petition, Defendant respectfully moves this Court to dismiss Plaintiff's First Amended Petition with prejudice, and for such other relief as this Court deems just and appropriate.

## COUNTERCLAIMS

Counterclaim Plaintiff Information Technologies, Inc., ("Counterclaim Plaintiff" or "Counterclaim Plaintiff ITI"), for its Counterclaims against Counterclaim Defendant Regional Justice Information Services Commission ("REJIS"), states as follows:

## THE NATURE OF THE ACTION

1.     This is a civil action whereby Counterclaim Plaintiff seeks a declaratory judgment (Count I):

   A. Declaring that Counterclaim Defendant REJIS is no longer a "public entity" as used in § 537.600 R.S.Mo.;

   B. Declaring that Counterclaim Defendant REJIS is a no longer an entity of the sovereign, the State of Missouri;

   C. Declaring that Counterclaim Defendant REJIS no longer operates under the police power of the state of Missouri;

   D. Declaring that Counterclaim Defendant REJIS no longer operates under the police power of the state of Missouri in the interest of the public health, safety and welfare; and

   E. Declaring that Counterclaim Defendant REJIS is no longer protected by sovereign immunity.

2.   Counterclaim Plaintiff Information Technologies, Inc. also brings causes of action against Counterclaim Defendant REJIS for:

   A. Monopolization in violation of section 2 of the Sherman Act, 15 U.S.C. § 2, and damages pursuant to section 4 of the Clayton Act, 15 U.S.C. § 15 (Count II);

   B. Attempted monopolization in violation of section 2 of the Sherman Act, 15 U.S.C. § 2, and damages pursuant to section 4 of the Clayton Act, 15 U.S.C. § 15 (Count III);

   C. Monopolization in violation of the Missouri Antitrust Law, § 416.031.2 R.S.Mo., and damages pursuant to § 416.121 R.S.Mo. (Count IV);

D. Attempted monopolization in violation of the Missouri Antitrust Law, § 416.031.2 R.S.Mo., and damages pursuant to § 416.121 R.S.Mo. (Count V); and

E. Injunctive relief pursuant to 15 U.S.C. § 26 (Count VI).

3.      More than 25 years ago, the Missouri Supreme Court held for the first time in *State ex rel Regional Justice Information Service Commission v. Saitz*, 798 S.W.2d 705, 707 (Mo. banc 1990) that Counterclaim Defendant REJIS was protected by sovereign immunity, because "law enforcement and the administration of the criminal justice system are within the exclusive police power of the state,"  and at the time REJIS was exclusively engaged in activities constituting the administration of the criminal justice system within the State of Missouri.

4.      The Amended Petition admits that "the purpose of the Commission [Counterclaim Defendant REJIS], as stated in ordinances and the REJIS commission subsequently adopted bylaws, is to coordinate a regional database of criminal arrests and dispositions, so as to promote efficient law enforcement and administration of criminal justice." Amended Petition at ¶ 4.

5.      29 C.F.R. 20.3(b) defines the administration of criminal justice as:

"…performance of any of the following activities:  Detection, apprehension, detention, pretrial release, post-trial release, prosecution, adjudication, correctional supervision, or rehabilitation of accused persons or criminal offenders.  The administration of criminal justice shall include criminal identification activities and the collection, storage, and dissemination of criminal history record information."

6.      Since the Missouri Supreme Court's 1990 decision, Counterclaim Defendant REJIS has changed its character and expanded the scope of its operations beyond the administration of criminal justice in such a fashion that it is no longer a sovereign entity entitled to the protection of sovereign immunity.

7.      There is an actual case or controversy concerning Counterclaim Defendant REJIS's status as a government entity because Counterclaim Defendant REJIS has asserted as injury in this case that its customers are questioning its rightful status as a government entity and because Counterclaim Defendant REJIS asserts on one hand that it is entitled to sovereign immunity and exempt from the RFP process for proposals and on the other hand that Counterclaim Plaintiff ITI "competes" with REJIS.

     A.   Counterclaim Defendant REJIS pleads in Paragraph 4 of the Amended Petition that "The REJIS commission is a governmental entity".

     B.   Counterclaim Defendant REJIS further alleges that "Plaintiff REJIS became concerned when its customers, potential customers and government officials began expressing concerns and questioning REJIS government standing." Amended Petition at ¶ 13 (emphasis added).

     C.   Counterclaim Defendant REJIS also includes a statement that "the request for proposal (RFP) process is only required when a government agency contracts with a non-governmental entity.  Such is not required when a governmental entity contracts with another governmental entity, such as REJIS." Amended Petition at ¶ 22 (emphasis added).

     D.   Counterclaim Defendant REJIS further pleads that "Defendant's use of Plaintiff's marks has caused confusion and is continuing to cause confusion in the market and specifically with Plaintiff's customers and potential customers regarding Plaintiff's business and its governmental status."  Amended Petition at ¶ 62 (emphasis added).

8.     Counterclaim Defendant REJIS's actions and pleadings in this case demonstrate that REJIS is no longer acting as a governmental entity.  Counterclaim Defendant REJIS asserts that "Defendant ITI is in generally the same type of business as REJIS <u>and is a competitor of REJIS</u>" (Amended Petition at ¶ 5) and asserts that Defendant's actions have caused Counterclaim Defendant REJIS's customers to question whether REJIS is a government entity.

## RELEVANT MARKETS AND MARKET POWER

9.     While Counterclaim Defendant REJIS was changing its character and expanding the scope of its operations beyond the administration of criminal justice, Counterclaim Defendant REJIS uses its market power to accomplish anticompetitive effects on the relevant markets as Counterclaim Defendant REJIS uses the veil of being a "quasi-governmental" entity and a "criminal justice agency" to gain unfair competitive advantage over entities such as Counterclaim Plaintiff Information Technologies, Inc. by promoting government-to-government transactions in lieu of competitive bidding, thus eliminating competition from private sector vendors.

10.   The relevant product market implicated in this action is the exchange, interchange and processing of itemized criminal justice information statistics and records pertaining to crime, criminal data and the courts, and the acquisition, collection, classification, preservation and exchange of said itemized information in conjunction with information systems of authorized criminal justice agencies.  Counterclaim Defendant REJIS's share of the relevant product market is greater than 70%.

11.   The relevant geographic market for the above is that within the boundaries of St. Louis City and St. Louis County, as within that geographic area, Counterclaim Defendant REJIS

has the ability to undercut any alternate market participants in the above market, to eliminate meaningful competition, and to harm consumers in those markets.

12.     Private commercial entities, such as Counterclaim Plaintiff Information Technologies, Inc., face steep hurdles in competing with Counterclaim Plaintiff REJIS in the relevant markets as Counterclaim Defendant REJIS uses the veil of being a "quasi-governmental" entity and a "criminal justice agency" to gain unfair competitive advantage over entities such as Counterclaim Plaintiff ITI by promoting government-to-government transactions in lieu of competitive bidding, thus eliminating competition from private sector vendors.

13.    Due to the use by Counterclaim Defendant REJIS of the veil of being a "quasi-governmental" entity and a "criminal justice agency" to gain unfair competitive advantage over entities such as Counterclaim Plaintiff ITI by promoting government-to-government transactions in lieu of competitive bidding, Counterclaim Defendant REJIS wholly disregards the competitive bidding requirements, giving Counterclaim Defendant REJIS virtually unlimited power to advantage itself in any of a number of ways in the relevant markets.

## JURISDICTION AND VENUE

14.     Count I is a declaratory judgment action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure.  The Court also has jurisdiction over the parties and subject matter herein pursuant to 28 U.S.C. § 1331 in that Counts II, III and VI arise under the laws of the United States.  Subject matter jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1367 with respect to the state common law claims that form part of the same case and controversy that is subject to this Court's jurisdiction.  The Court has further subject matter jurisdiction through Rule 13 of the Federal Rules of Civil Procedure.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b).  Each and all of the acts alleged herein were done by Counterclaim Defendant REJIS within this Judicial District, Counterclaim Defendant REJIS is doing and transacting business in this Judicial District; and a substantial portion of the events at issue have arisen and continue to occur in this Judicial District.

## THE PARTIES

16.     Counterclaim Defendant REJIS is an entity located in the City of St. Louis, Missouri.

17.     Counterclaim Plaintiff Information Technologies, Inc. is a Missouri corporation with its principal place of business in St. Louis County, Missouri.

18.     Counterclaim Plaintiff ITI is a privately owned full service provider of software solutions and services for the public safety industry.  Counterclaim Plaintiff ITI has been in business for over 27 years and has hundreds of installations throughout the United States.

19.     Counterclaim Plaintiff Regional Justice Information Services, Inc. ("REJIS, Inc.") is a Missouri corporation with its principal place of business in St. Louis County, Missouri.

20.     Counterclaim Plaintiff David Lommel is a citizen of the State of Missouri and resides within this judicial district.  Counterclaim Plaintiff Lommel is the President of ITI and the President of REJIS, Inc.

21.     Counterclaim Plaintiff Michael Krebs is a citizen of the State of Missouri and resides within this judicial district.  Counterclaim Plaintiff Krebs is the corporate secretary of ITI and the corporate secretary of REJIS, Inc.

## GENERAL ALLEGATIONS

22.     Counterclaim Defendant REJIS was and still claims to be a "quasi-governmental agency" and "criminal justice agency," and provides the same products and/or services as private sector vendors such as Counterclaim Plaintiff ITI.

23.     Counterclaim Defendant REJIS uses the veil of being a "quasi-governmental agency" and a "criminal justice agency" to gain unfair competitive advantage over entities such as Counterclaim Plaintiff ITI by promoting government-to-government transactions in lieu of competitive bidding, thus eliminating competition from private sector vendors.

24.     Counterclaim Defendant REJIS uses the veil of being a "quasi-governmental agency" and a "criminal justice agency" to gain unfair competitive advantage over entities such as Counterclaim Plaintiff ITI by promoting government-to-government transactions in lieu of competitive bidding for the sole reason of obtaining private economic gain from participating in the relevant markets, set forth above.

25.     Customers of Counterclaim Defendant REJIS include entities from other states who purchase services from Counterclaim Defendant REJIS.

## THE HISTORY OF REJIS

26.     REJIS, Incorporated was incorporated in June, 1973 under the General Not-For-Profit Corporation Law of the state of Missouri.

27.     REJIS, Incorporated was organized:

A. To establish an information processing system or systems within the Metropolitan St. Louis Area, and to further such system or systems for law enforcement and related purposes among criminal justice agencies, other organizations and persons; and when authorized by the Board of Directors of the corporation, (1) to provide and administer within said area other common service-type functions for law enforcement purposes; and (2) to provide and carry on activities in furtherance of any such information processing systems,

programs or functions, including, without limitation:

    i.   The adoption of rules governing the operation of any such information processing systems and for common service-type functions <u>in the field of law enforcement</u>, and rules respecting requirements applicable to agencies or persons or organizations participating in any such systems, programs or functions.

    ii.   The performance of services to members and others authorized by the by-laws to participate in information processing systems <u>in the field of criminal justice</u>, or other service-type functions in the field of law enforcement. (Emphasis added).

28.    REJIS, Incorporated was dissolved on May 26, 1976.

29.    The resolution dissolving REJIS, Incorporated provides, in part, that "it is and was the intention of all parties that the REJIS Commission assume, continue and perform the obligations of REJIS, Incorporated".

30.    Counterclaim Defendant REJIS became the successor of REJIS incorporated, pursuant to authority in the Missouri Constitution (Article VI, § 16), Missouri statute (§ 70.220.1 R.S.Mo.) and ordinances of the City of St. Louis and St. Louis County.

31.    Article VI, § 16 of the Missouri Constitution provides:

Cooperation by local governments with other governmental units.

Section 16. Any municipality or political subdivision of this state may contract and cooperate with other municipalities or political subdivisions thereof, or with other states or their municipalities or political subdivisions, or with the United States, for the planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service, in the manner provided by law.

32.    70.220.1 R.S.Mo. provides:

Any municipality or political subdivision of this state, as herein defined, may contract and cooperate with any other municipality or political subdivision, or with an elective or appointive official thereof, or with a duly authorized agency of the United States, or of this state, or with other states or their municipalities or political subdivisions, or with any private person, firm, association or corporation, for the planning, development,

construction, acquisition or operation of any public improvement or facility, or for a common service; provided, that the subject and purposes of any such contract or cooperative action made and entered into by such municipality or political subdivision shall be within the scope of the powers of such municipality or political subdivision.

33.     St. Louis City Revised Code Chapter 3.80.010 (St. Louis City Ordinance 57056) provides:

The Mayor, on behalf of the city, is authorized to enter into a cooperative agreement with the county of St. Louis, through its supervisor, upon passage and approval of a like ordinance of the legislative body of the county, to provide for the creation, development and operation of a regional computerized criminal justice information system.

34.     St. Louis City Revised Code Chapter 3.80.020 provides:

The cooperative agreement shall contain terms and conditions as may be approved by the city counselor and shall further include, but not be limited to:

A.   The exchange, interchange and processing of itemized criminal justice information, statistics and records pertaining to crime, criminal data and the courts, and for the acquisition, collection, classification, preservation and exchange of said itemized information in conjunction with information systems of the Federal Bureau of Investigation, the Missouri State Highway Patrol, the Missouri Supreme Court and other authorized criminal justice agencies;

B.   The establishment of a joint regional commission to be known as the REJIS commission and to be governed by the provisions of this chapter.

35.     St. Louis City Revised Code Chapter 3.80.080 provides:

The cooperative agreement shall provide that the commission shall adopt bylaws which shall be filed with the administrative director of the county council and the register of the city of St. Louis. Such bylaws shall include but not be limited to:

A.   Personnel procedures for the employment of a general manager and such other permanent and part-time staff as the commission may deem necessary, procedures for the promotion, disciplining and termination of such employees in accordance with the principles of due process;

B.   The requirement of an annual audit upon the close of the books of the fiscal year by an independent auditing firm;

C.   The requirement of compliance with all federal and state laws and regulations regarding the preservation of the individual's right to privacy, the security and dissemination of all such information;

D.   The authorization to purchase, lease or otherwise acquire all necessary equipment, facilities and materials to operate said information processing system or systems;

E.   The authorization to accept, receive and expend funds, grants and services from the federal government or its agencies, and from instrumentalities of state and local governments;

F.   The authorization to provide on-line and batch processing services to authorized units of state and local government and related criminal justice agencies, and to the courts, and to establish the charge to be assessed for such services, to prorate said charges among the users of such services as may be just and appropriate;

G.   The authorization to assume, continue and perform the obligations of REJIS, incorporated and to provide for the transition of its functions to the commission; and

H.   The authorization to contract or be contracted with governmental agencies and other agencies whether located within or without the boundaries of the city of St. Louis and the county of St. Louis.

36.   St. Louis County Ordinance No. 7631, authorizing the cooperative agreement with the City of St. Louis, provides:

…the County Council deems it desirable for promoting the efficient administration of its judicial system and for preserving the effectiveness of its law enforcement and criminal justice systems to provide by joint agreement for the exchange, interchange and processing of itemized criminal justice information, statics and records pertaining to crime, criminal data and the courts, and further to provide further acquiring, collecting, classifying, preserving and exchanging of said itemized information in conjunction with information systems of the Federal Bureau of Investigation, the Missouri State Highway Patrol, the Missouri Supreme Court, and other authorized criminal justice agencies ….

37.   St. Louis County Ordinance No. 7631, sections 1 and 2, were amended by Ordinance No. 18,657 in October, 1997 adding two new sections:

Section 1(2):  Authorization for the provision by regional computerized criminal justice information system of data processing services to, or jointly with, a duly authorized agency of the United States or any state, or any municipality, political subdivision, governmental entity or quasi-governmental entity of this or any other state …

Section 2(8):  The authorization to enter into contracts with any person or entity for any purpose within the scope of the powers authorized herein.

## THE NATURE OF REJIS CHANGES

38.   The sole original governmental purpose behind the creation of Counterclaim Defendant REJIS was to operate a data processing center for the criminal justice users of the two government bodies – St. Louis City and St. Louis County.

39.   This governmental purpose included management of criminal justice data and connection to the Missouri Uniform Law Enforcement System ("MULES").

40.   Counterclaim Defendant REJIS later expanded its initial purpose to include the collection of local arrest and wanted information as part of the database.

41.   Since its formation, Counterclaim Defendant REJIS has claimed to be a criminal justice agency serving the information technology needs of governmental agencies.

42.   In 1997, Counterclaim Defendant REJIS changed its character and focus from a criminal justice agency into an information technology business that focuses on a "customer base" beyond the scope of criminal justice (including a number of private entities), and is currently seeking to do business in other states.

43.   As more thoroughly explained below, and as recognized by the United States Federal Bureau of Investigation and the Missouri State Highway Patrol, Counterclaim Defendant REJIS no longer meets the definition of a "criminal justice agency" as defined in 28 U.S.C. § 20.

44.   For example, Counterclaim Defendant REJIS entered into a contract for $1.4 million to perform computer services for the Bi-State Development Agency or Metro Transit

(bus and light rail) in St. Louis, Missouri completely unrelated to the administration of criminal justice.

45.     In 1997, Counterclaim Defendant REJIS also changed the essential purpose of its services beyond REJIS' original, chartered purpose (providing data services to criminal justice agencies for St. Louis City and St. Louis County) and is providing services unrelated to the administration of criminal justice.

46.     Although initially created to provide basic criminal database services to the City of St. Louis and St. Louis County, Counterclaim Defendant REJIS has changed its original chartered purpose and now provides goods and services well beyond criminal justice services, including:

> A.  Electronic Policy Distributions and Acknowledgement (PASS);
>
> B.  Subdivision Escrow Tracking;
>
> C.  Data Center Colocation;
>
> D.  Public Record Access – Missouri Bar Computer Network (Mo Bar Net);
>
> E.  Public Record Access – Private Security Network (PS Net);
>
> F.  Public Record Access – Government Access Network (GA Net);
>
> G.  Grant Management System (GMS);
>
> H.  Automated On-Line Payment Service;
>
> I.   Desktop & Network IT Support Services;
>
> J.   Web Development & Support (Web Services); and
>
> K.  Global CAD and RMS.

47.     The services listed above are unrelated to the administration of criminal justice.

48.     Due to Counterclaim Defendant REJIS's efforts to compete with private companies and expand its services, it now provides IT services well beyond the administration of criminal justice, including Desktop & Network IT Support Services, resale of Global Software products, and automated online payment services.

49.     Serving the IT needs of lawyers, private investigators, a transit agency, school districts and governmental agencies outside of law enforcement is not the function of a criminal justice agency.

50.     In addition to expanding the type of information technology services available to its customers, Counterclaim Defendant REJIS has also expanded beyond its original chartered territory of St. Louis City and St. Louis County.  Counterclaim Defendant REJIS today covers eight or more counties in the St. Louis metropolitan area (including Illinois) and has expanded into the Kansas City market (Missouri and Kansas).

51.     In 2010 Counterclaim Defendant REJIS began work for the City of Kansas City, Missouri beyond its original chartered purpose.

52.     Counterclaim Defendant REJIS has marketed its services to entities in Wyandotte County, Kansas; and Columbia, Illinois.

53.     Throughout all of these expansions of its business ventures, Counterclaim Defendant REJIS falsely represents to its governmental customers that they can contract with Counterclaim Defendant REJIS without open bidding as required by Missouri state law, section 50.660 R.S.Mo., by asserting that they are "government-to-government transactions," despite the fact that Counterclaim Defendant REJIS is providing services beyond its governmental purpose and is operating much like a for-profit business.  In *Information Technologies, Inc. v. St. Louis County and Regional Justice Information Service*, 14 S.W.3d 60 (Mo.App.E.D. 1999), the

Missouri Court of Appeals invalidated a contract that St. Louis County and Counterclaim Defendant REJIS entered into for a Computer Aided Dispatch (CAD) system because the contract was entered into without competitive bidding required by section 50.660 R.S.Mo. Despite the decision of the Missouri Court of Appeals, Counterclaim Defendant REJIS continues to falsely represent to its governmental customers that they can contract with Counterclaim Defendant REJIS without open bidding as required by Missouri state law, section 50.660 R.S.Mo.

## THE REQUIREMENT OF COMPETITIVE BIDDING

54.     Section 50.660 R.S.Mo. states, in part:

> 50.660.1. … <u>All contracts and purchases shall be let to the lowest and best bidder after due opportunity for competition</u>, including advertising the proposed letting in a newspaper in the county or township with a circulation of at least five hundred copies per issue, if there is one, except that the advertising is not required in case of contracts or purchases involving an expenditure of less than six thousand dollars. (Emphasis added).

55.     St. Louis County Charter Section 2.180 states:

> Pursuant to and in conformity with the constitution of Missouri and without limiting the generality of the powers vested in the council by this charter, the council shall have, by ordinance, the power to:

> 30. Establish uniform procedures governing purchases of and contracts for property and services <u>all of which shall be based upon competitive bids except in those instances authorized by ordinance</u>…. (Emphasis added).

56.     Missouri has a state interest in controlling by statute the making of contracts by the officers of municipal corporations.  These laws are for the protection of Missouri's citizens who support public agencies through the payment of taxes.

57.     The state of Missouri supports the public policy behind the practice of obtaining competitive bids.

26

58.     Missouri has a state interest in controlling by statute the making of contracts by the officers of municipal corporations.  These laws are for the protection of Missouri's citizens who support public agencies through the payment of taxes.

**THE REQUIREMENT OF PREFERENCE TO MISSOURI ENTITIES**

59.     Section 34.073.1 R.S.Mo. requires preference to Missouri firms, corporations and individuals.

60.     Section 34.073.1 R.S.Mo. states:

> In letting contracts for the performance of any job or service, all agencies, departments, institutions, and other entities of this state and of each political subdivision of this state shall give preference to all firms, corporations, or individuals doing business as Missouri firms, corporations, or individuals, or which maintain Missouri offices or places of business, when the quality of performance promised is equal or better and the price quoted is the same or less. The commissioner of administration may also give such preference whenever competing bids, in their entirety, are comparable.

61.     Counterclaim Defendant REJIS and Global Software Corporation, without competitive bidding, entered into a License and Reseller Agreement in which Global Software Corporation agreed to supply licensed software to Counterclaim Defendant REJIS.

62.     Global Software Corporation software is manufactured and distributed outside of the state of Missouri and licensed and resold by Counterclaim Defendant REJIS within and without the State of Missouri.

63.     Global Software Corporation is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma.

64.     Counterclaim Defendant REJIS and Global Software Corporation agreed that Counterclaim Defendant REJIS could resell the licensed software throughout the entire United States.

65.     Counterclaim Defendant REJIS then entered into agreements with other entities to provide the Global Software Corporation licensed software without complying with the competitive bidding process, such as to the Kirkwood, Missouri Police Department and to the Florissant, Missouri Police Department.

## REJIS IS NO LONGER A CRIMINAL JUSTICE AGENCY

66.     Counterclaim Defendant REJIS represents to its customers that it is still a "criminal justice agency" and that its services are still "governmental".

67.     When Counterclaim Defendant REJIS was originally created, Counterclaim Defendant REJIS utilized the Originating Agency Identification (ORI) of the St. Louis Metropolitan Police Department as a carryover from when the regional service was provided by a division of the police department.

68.     In 1975 the FBI's Criminal Justice Information Service (CJIS) Advisory Policy Board reviewed and debated the ORI issuance issue, which led to approval and issuance of an ORI to Counterclaim Defendant REJIS at their December, 1975 meeting.

69.     However, both the FBI and the Missouri State Highway Patrol have rejected Counterclaim Defendant REJIS's claims to be a criminal justice agency.  After REJIS changed the scope and character of its operations, the FBI withdrew the Originating Agency Identification ("ORI"), because Counterclaim Defendant REJIS no longer qualifies as a criminal justice agency.

70.     As a result of working with the Kansas Highway Patrol to acquire an ORI to enable Counterclaim Defendant REJIS's support of Kansas law enforcement activities, the FBI determined, in September, 2011, to deny Counterclaim Defendant REJIS an ORI.

71.     The FBI's decision to deny Counterclaim Defendant REJIS access was premised on the FBI's conclusion that Counterclaim Defendant REJIS is not a "criminal justice agency" under 28 C.F.R. §20.3.

72.     An entity qualifies for a CJIS ORI only if it is a "criminal justice agency" under 28 C.F.R. § 20.3(g), i.e., that it is a "governmental agency or any subunit thereof that performs the administration of criminal justice" and "that allocates a substantial part of its annual budget to the administration of criminal justice".  Under 28 C.F.R. § 20.3(b), "administration of criminal justice shall include criminal identification activities and the collection, storage and dissemination of criminal history record information."

73.     Counterclaim Defendant REJIS now fails to meet the statutory definition of "criminal justice agency" as defined in 28 U.S.C. § 20.3(g).

74.     Although Counterclaim Defendant REJIS asserts that it is a subunit of a governmental agency (i.e., the City of St. Louis and St. Louis County), Counterclaim Defendant REJIS no longer exclusively performs services related to the administration of criminal justice.

75.     In fact, Counterclaim Defendant REJIS does not actually collect or store felony criminal history record information at all.  In Missouri, these records are collected and stored in Missouri by the Missouri State Highway Patrol.

76.     Hiding behind its assertion of quasi-governmental status, Counterclaim Defendant REJIS obtains customers without having to follow the normal bidding process that its competitors must follow.

77.     Counterclaim Defendant REJIS competes with several private IT service providers, gaining an unfair competitive advantage in the following manner:

A. Providing network cabling, desktop PC installation and support, network routing, network management and related services to governmental organizations without open bidding.  Counterclaim Defendant REJIS's sales staff routinely tells these entities that doing business with Counterclaim Defendant REJIS is a government-to-government transaction and is not subject to state bidding laws;

B. Providing information access to non-governmental organizations such as law firms and private investigators;

C. Selling commercial software to governmental agencies without bid.  For over ten years, Counterclaim Defendant REJIS has been a reseller of Computer Aided Dispatch (CAD) and Records Management Software (RMS) and related software for Global Software.  Claiming these to be government-to-government transactions, Counterclaim Defendant REJIS assists its clients in the circumvention of state bidding laws to acquire this software.  Other vendors have no opportunity to bid on these government projects; and

D. By claiming government status, Counterclaim Defendant REJIS has obtained federal and state grants for the development of their products and services. No private vendor has this opportunity.

78. Among the strategic goals announced by Counterclaim Defendant REJIS are:

A. "Position the organization to maintain and expand our valued partnerships";

B. "Re-design the REJIS website to enhance marketing capabilities for REJIS products/services through this media.…";

C. "Quarterly review and research public/private sector industry trends and local/regional competitors for services and/or practices to provide REJIS and our customers improved cost of ownership and consistently reliable services

….”;

D. "Create a process to identify future major business opportunities and develop strategies and action plans to capture those opportunities ….”;

E. "Increased competition in the market for criminal justice, government and quasi-government agencies (State of Missouri, OSCA, Coplink, private vendors, etc.) must be identified and mitigated to facilitate continued growth”;

F. "Too much reliance on St. Louis City and St. Louis County for our revenue could adversely impact our financial position if we do not diversify our customer base”;

G. "Position the organization as a valued partner to maintain and expand our customer base”; and

H. "Improve our infrastructure and processes to be more efficient which positions REJIS to generate the resources for continuous future growth.”

79. Counterclaim Defendant REJIS has engaged in the following activity:

A. Contacted clients of Counterclaim Plaintiff ITI and encouraging them to switch to Counterclaim Defendant REJIS's software and the software of Counterclaim Defendant REJIS's partners;

B. Promoted the products of private entities;

C. Changed its direction since its original formation and is no longer just a data process/sharing network;

D. Counterclaim Defendant REJIS's services now include the development of customer applications and web designs, online and batch processing, installation and support of custom and commercially available software, systems integration, custom interfaces, facility management, data center colocation, reselling commercially available hardware and software, access to remote data bases, networking, training and help desk support;

E. Counterclaim Defendant REJIS now provides fee based services to other governmental agencies and the private sector such as Mo Bar Net to the Members of the Missouri Bar, PS Net to members of the private security community and GA Net to other governmental agencies;

F. Upon information and belief, Counterclaim Defendant REJIS has not, and does not, pay federal or state taxes on income related Mo Bar Net and PS Net;

G. Counterclaim Defendant REJIS has developed many products which are in direct competition with the private industry such as Law Enforcement Data Suite (LEWeb), Law Enforcement Traffic System (LETS), Jail Management Suite (IJMS), Court Management Suite (IMDS), Booking Photo Software (IRIS), Mobile Traffic Ticketing Service, Automated On-Line Payment Service for court fines, Concealed Carry Registration Service (CWC);

H. Counterclaim Defendant REJIS has developed many products which are unrelated to the administration of criminal justice such as Electronic Policy Distribution and Acknowledgement (PASS), Public Works, Code Enforcement & Licensing Suite, Subdivision Escrow Tracking, Desktop & Network IT Support Services, Data Center Colocation, and Web Development & Support, Grant Management System (GMS);

I. Counterclaim Defendant REJIS has also entered into an agreement with a private Computer Aided Dispatch ("CAD") and Records Management Software ("RMS") company to sell and support their product without competitive bidding;

J. Counterclaim Defendant REJIS created unfair advantage utilizing their "quasi-governmental" status in selling their products, utilizing government-to-government transactions instead of open bids; and

K. Counterclaim Defendant REJIS refuses to provide interfaces to Counterclaim Plaintiff ITI so that Counterclaim Plaintiff ITI can respond to requests for proposals of departments desiring CAD & RMS products, while providing these same interfaces to Counterclaim Plaintiff ITI's competitors.

80. Upon information and belief, the City of Kirkwood, Missouri and the City of Florissant, Missouri both purchased products from Counterclaim Defendant REJIS in government-to-government, no-bid exchanges based on the representations of Counterclaim Defendant REJIS that competitive contracting was not necessary.

81. While Counterclaim Defendant REJIS was changing its character and expanding the scope of its operations beyond the administration of criminal justice, Counterclaim Defendant REJIS uses its market power to accomplish anticompetitive effects on the relevant markets as Counterclaim Defendant REJIS uses the veil of being a "quasi-governmental" entity and a "criminal justice agency" to gain unfair competitive advantage over entities such as

Counterclaim Plaintiff Information Technologies, Inc. by promoting government-to-government transactions in lieu of competitive bidding, and thus eliminating competition from private sector vendors.

82.  Private commercial entities, such as Counterclaim Plaintiff ITI, face steep hurdles in competing with Counterclaim Plaintiff REJIS in the relevant markets by Counterclaim Defendant REJIS's refusal to provide interfaces to Counterclaim Plaintiff ITI so that Counterclaim Plaintiff ITI can respond to requests for proposals of departments desiring CAD & RMS products, while providing these same interfaces to Counterclaim Plaintiff ITI's competitors.

83.  Counterclaim Defendant REJIS's anticompetitive conduct includes, but is not limited to, the following:

A.  Counterclaim Defendant REJIS recently announced a new product, a website to disseminate court records from municipal courts which use Counterclaim Defendant REJIS's court software.  The product will only work if the court uses Counterclaim Defendant REJIS's court software.  The City of Maryland Heights does not use Counterclaim Defendant REJIS's court software; rather, the City of Maryland Heights uses Counterclaim Plaintiff ITI's court software. Despite a press release from Counterclaim Defendant REJIS that the new product was good for the community, Counterclaim Defendant REJIS stated that  "[u]nfortunately, technical limitations do not allow for accurate information from other case management services to be included on the REJIS website.  The primary reason is that we designed our website to display near real-time data to provide accurate information to the public.  Creating an interface to data from another vendor would require that a sophisticated batch file synchronization process be developed.  Even then, technical limitations would create a data latency problem which, at times, may provide inaccurate information to the public causing confusion and increase on-going costs to both REJIS and the vendor to support the interface."

B.  If a public entity arrests a person and wants to take the person to St. Louis County to "book" the person, Counterclaim Defendant REJIS will not take arrest records from police departments who use Counterclaim Plaintiff ITI's software.  The arresting entity has to enter the arrest record into Counterclaim Defendant REJIS's software because Counterclaim Defendant REJIS will not permit an interface with Counterclaim Plaintiff ITI's software.  Rather, the

arrest record has to be manually input into Counterclaim Defendant REJIS's software.

C.  A representative of Counterclaim Defendant REJIS has stated to Counterclaim Plaintiff ITI that Counterclaim Defendant REJIS will not provide Counterclaim Plaintiff ITI with interfaces to Counterclaim Defendant REJIS's products because if Counterclaim Defendant REJIS did allow such interfaces, Counterclaim Defendant REJIS would go out of business.  The interface at issue is through the product purchased without competitive bidding by Counterclaim Defendant REJIS from Global Software, a non-Missouri, Oklahoma-based company.

D.  Upon information and belief, Crime Matrix was significantly enhanced by a grant from the federal government in excess of $400,000.  Also upon information and belief, Counterclaim Plaintiff ITI believes the grant provided a means for all agencies in St. Louis County to submit information into the system.  The only way to submit data into Crime Matrix is to submit data through St. Louis County's CARE system.  Access to Crime Matrix, however, is only available through an interface with Counterclaim Defendant REJIS. Counterclaim Defendant REJIS will not allow an interface to St. Louis County's CARE system to Counterclaim Plaintiff ITI.

E.  Counterclaim Defendant REJIS does not allow entities using non-Counterclaim Defendant REJIS's products to enter mugshots into Counterclaim Defendant REJIS's system.  Rather, Counterclaim Defendant REJIS requires entities to use Counterclaim Defendant REJIS's product, IRIS, in order to submit information to Counterclaim Defendant REJIS.  With respect to IRIS, an entity has to buy Counterclaim Defendant REJIS's hardware to put images into Counterclaim Defendant REJIS's system. Counterclaim Defendant REJIS will not accept an image from another system.

F.  IMDS (Integrated Metropolitan Docketing System) is Counterclaim Defendant REJIS's court software.  If a given court uses Counterclaim Plaintiff ITI's product and performs electronic ticketing on Counterclaim Plaintiff ITI's system, Mobile Patrol, the court cannot send the information directly into Counterclaim Defendant REJIS's system.  Rather, the court has to manually enter the information into Counterclaim Defendant REJIS's system.  Counterclaim Defendant REJIS refuses to allow an interface to court systems using Counterclaim Plaintiff ITI systems.

G.  LEWeb is Counterclaim Defendant REJIS's suite for inquiries into Counterclaim Defendant REJIS's system, and thus into MULES and NCIC. Counterclaim Defendant REJIS users utilize LEWeb in place of MULES (the State solution) for all inquiries and to enter data.  When a Counterclaim Defendant REJIS client enters felony data (State charges) into Counterclaim Defendant REJIS's system, Counterclaim Defendant REJIS pushes this data

into MULES.  When a Counterclaim Defendant REJIS client enters local arrest records, wanted, warrants, etc. of a misdemeanor type, Counterclaim Defendant REJIS maintains this information locally only (not pushed to MULES) in its "hot files' and thus the information is only available in Counterclaim Defendant REJIS's system.  Over time, this has created the situation where agencies believe that they have to use the products of Counterclaim Defendant REJIS in order to see local data.  Counterclaim Defendant REJIS does not share this data with any other system and allows only a minimal interface which is called its "CAD interface".  Vendors, including Counterclaim Plaintiff ITI, can do inquiries through this interface, but the interface is old and limited.   For example, if a police officer pulls a person over and the person does not have a driver's license, but provides the officer with his/her name, if an inquiry goes through LEWeb, the name inquiry will come back with a photograph of the person through the Missouri Department of Revenue, which is helpful to the officer.  However, if the name inquiry goes through Counterclaim Plaintiff ITI's software (using Counterclaim Defendant REJIS's CAD interface), the inquiry does not come back with a photograph of the person.  If the entity is using Counterclaim Plaintiff ITI's software and inquires through MULES, the image will come back with the inquiry.  Counterclaim Defendant REJIS refuses to update the interface.

H.  If an agency is using Counterclaim Plaintiff ITI's e-ticket functionality, and is using Counterclaim Defendant REJIS's court software, Counterclaim Defendant REJIS will not allow the ticket data to be uploaded to it system.  Conversely, if an agency uses Counterclaim Defendant REJIS's e-ticketing software and Counterclaim Plaintiff ITI's court software, Counterclaim Defendant REJIS does not provide the ability to download the ticket data to Counterclaim Plaintiff ITI's court system.

## COUNT I

## DECLARATORY JUDGMENT BROUGHT
## BY COUNTERCLAIM PLAINTIFF INFORMATION TECHNOLOGIES, INC.

84.    Counterclaim Plaintiff Information Technologies, Inc. hereby incorporate paragraphs 1-83 above as if fully set forth herein.

85.    There is an actual case or controversy concerning Counterclaim Defendant REJIS's status as a government entity because REJIS has asserted as injury in this case that its customers are questioning its rightful status as a government entity and because Counterclaim

Defendant REJIS asserts on one hand that it is entitled to sovereign immunity and exempt from the RFP process for proposals and on the other hand that Defendant ITI "competes" with REJIS.

    A.  Counterclaim Defendant pleads in Paragraph 4 of the Amended Petition that "The REJIS commission is a governmental entity".

    B.  Counterclaim Defendant REJIS further alleges that "Plaintiff REJIS became concerned when its customers, potential customers and government officials began expressing concerns <u>and questioning REJIS government standing</u>." Amended Petition at ¶ 13 (emphasis added).

    C.  Counterclaim Defendant REJIS also includes a statement that "the request for proposal (RFP) process is only required when a government agency contracts with a non-governmental entity. <u>Such is not required when a governmental entity contracts with another governmental entity, such as REJIS</u>." Amended Petition at ¶ 22 (emphasis added).

    D.  Counterclaim Defendants further pleads that "Defendant's use of Plaintiff's marks has caused confusion and is continuing to cause confusion in the market and specifically with Plaintiff's customers and potential customers regarding Plaintiff's business <u>and its governmental status</u>." Amended Petition at ¶ 62 (emphasis added).

86.   Counterclaim Defendant REJIS's actions and pleadings in this case demonstrate that REJIS is no longer acting as a governmental entity.  Counterclaim Defendant asserts that "Defendant ITI is in generally the same type of business as REJIS <u>and is a competitor of REJIS</u>" (Amended Petition at ¶ 5) and asserts that Defendant's actions have caused Counterclaim Defendant REJIS's customers to question whether REJIS is a government entity.

## COUNT II

## MONOPOLIZATION IN VIOLATION OF 15 U.S.C. § 2 BROUGHT BY COUNTERCLAIM PLAINTIFF INFORMATION TECHNOLOGIES, INC.

87. Counterclaim Plaintiff Information Technologies, Inc. hereby incorporates paragraphs 1-86 above as if fully set forth herein.

88. Counterclaim Defendant REJIS has engaged in anticompetitive conduct to maintain its monopoly power in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.

89. Counterclaim Defendant REJIS's actions as alleged herein constitute anticompetitive conduct and unlawful monopoly maintenance in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.

90. Counterclaim Defendant REJIS possesses monopoly power in the relevant market or markets, and willfully maintains such monopoly power.

91. Counterclaim Defendant REJIS's actions have the purpose and effect of excluding competition from the market of the exchange, interchange and processing of itemized criminal justice information statistics and records pertaining to crime, criminal data and the courts, and the acquisition, collection, classification, preservation and exchange of said itemized information in conjunction with information systems of authorized criminal justice agencies , by actually foreclosing competition in the market and preventing entry.

92. Counterclaim Defendant REJIS's continued anticompetitive conduct and maintenance of its monopoly power is not the result of superior skill, business acumen, or historic accident.

93. Counterclaim Defendant REJIS engaged in this anticompetitive conduct for its private economic gain and with the intent of profiting from the monopolization of the market for

the exchange, interchange and processing of itemized criminal justice information statistics and records pertaining to crime, criminal data and the courts, and the acquisition, collection, classification, preservation and exchange of said itemized information in conjunction with information systems of authorized criminal justice agencies.

94.  By foreclosing meaningful competition, Counterclaim Defendant REJIS has acted in a manner that will result in consumers, in the relevant market, paying higher prices and facing a reduction in the quantity and quality of options.

95.  The conduct engaged in by Counterclaim Defendant REJIS involves, and adversely affects, interstate commerce.

96.  There is no clearly articulated nor affirmatively expressed state policy in Missouri for an alleged subunit of a governmental agency (i.e., the City of St. Louis and St. Louis County) such as Counterclaim Defendant REJIS to engage in the conduct alleged herein in order to gain a market advantage in purely private business activities for its private economic gain, nor one which these actions would foreseeably result.

97.  There is no clearly articulated nor affirmatively expressed state policy in Missouri for an alleged subunit of a governmental agency (i.e., the City of St. Louis and St. Louis County) such as Counterclaim Defendant REJIS to engage in the conduct alleged herein in order to gain a market advantage in purely private business activities for its private economic gain, or to effectively delegate that policy to a private entity, nor one from which these actions would foreseeably result.  Any such policy, if it exists, does not exist under active state supervision.  As such, Counterclaim Defendant REJIS is not immune from antitrust liability for the actions set forth herein.

98.   The lack of specific requirements in the ordinances cited herein effectively make Counterclaim Defendant REJIS an independent decision maker regarding decisions which directly impact consumers in the relevant market, putting it outside any antitrust immunity for the actions set forth herein.

99.   Additionally, the state of Missouri's general grants of authority to St. Louis City and St. Louis County do not contemplate an alleged subunit of a governmental agency (i.e., the City of St. Louis and St. Louis County) such as Counterclaim Defendant REJIS to engage in the conduct alleged herein in order to gain a market advantage in purely private business activities for its private economic gain, nor one which these actions would foreseeably result, and, therefore, do not immunize Counterclaim Defendant REJIS from antitrust liability.

100. As a direct and foreseeable result of Counterclaim Defendant REJIS's monopoly maintenance, Counterclaim Plaintiff has suffered damages in an amount to be proved at trial.

## COUNT III

## ATTEMPTED MONOPOLIZATION IN VIOLATION OF 15 U.S.C. § 2 BROUGHT BY COUNTERCLAIM PLAINTIFF INFORMATION TECHNOLOGIES, INC.

101. Counterclaim Plaintiff Information Technologies, Inc. hereby incorporates paragraphs 1-100 above as if fully set forth herein.

102. Counterclaim Defendant REJIS has engaged in anticompetitive conduct to attempt to monopolize in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.

103. As an alternative to Count II, Counterclaim Defendant REJIS's actions as alleged herein constitute an unlawful attempt to monopolize in violation of Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2.

104. Specifically, Counterclaim Defendant REJIS's actions constitute a willful and intentional attempt to monopolize the market for the exchange, interchange and processing of

itemized criminal justice information statistics and records pertaining to crime, criminal data and the courts, and the acquisition, collection, classification, preservation and exchange of said itemized information in conjunction with information systems of authorized criminal justice agencies, by excluding competition from the market for the exchange, interchange and processing of itemized criminal justice information statistics and records pertaining to crime, criminal data and the courts, and the acquisition, collection, classification, preservation and exchange of said itemized information in conjunction with information systems of authorized criminal justice agencies.

105. Counterclaim Defendant REJIS's attempt to monopolize has a dangerous probability of success.

106. If Counterclaim Defendant REJIS achieves monopoly power in the relevant markets, it will result in consumers, in that market, paying higher prices and facing a reduction in the quantity and quality of options.

107. The conduct engaged in by Counterclaim Defendant REJIS involves, and adversely affects, interstate commerce.

108. There is no clearly articulated nor affirmatively expressed state policy in Missouri for an alleged subunit of a governmental agency (i.e., the City of St. Louis and St. Louis County) such as Counterclaim Defendant REJIS to engage in the conduct alleged herein in order to gain a market advantage in purely private business activities for its private economic gain, nor one in which these actions would foreseeably result.

109. There is no clearly articulated nor affirmatively expressed state policy in Missouri for an alleged subunit of a governmental agency (i.e., the City of St. Louis and St. Louis County) such as Counterclaim Defendant REJIS to engage in the conduct alleged herein in order to gain a

market advantage in purely private business activities for its private economic gain, or to effectively delegate that policy to a private entity, nor one from which these actions would foreseeably result.  Any such policy, if it exists, does not exist under active state supervision.  As such, Counterclaim Defendant is not immune from antitrust liability for the actions set forth herein.

110. The lack of specific requirements in the ordinances cited herein effectively make Counterclaim Defendant REJIS an independent decision maker regarding decisions which directly impact consumers in the relevant market, putting it outside any antitrust immunity for the actions set forth herein.

111. Additionally, the state of Missouri's general grants of authority to St. Louis City and St. Louis County do not contemplate an alleged subunit of a governmental agency (i.e., the City of St. Louis and St. Louis County) such as Counterclaim Defendant REJIS to engage in the conduct alleged herein in order to gain a market advantage in purely private business activities for its private economic gain, nor one in which these actions would foreseeably result, and, therefore, do not immunize Counterclaim Defendant REJIS from antitrust liability.

112. As a direct and foreseeable result of Counterclaim Defendant REJIS's attempt to monopolize, Counterclaim Plaintiff Information Technologies, Inc. has suffered damages in an amount to be proved at trial.

<u>**COUNT IV**</u>

<u>**MONOPOLIZATION IN VIOLATION OF § 416.031.2 R.S.Mo. BROUGHT BY COUNTERCLAIM PLAINTIFF INFORMATION TECHNOLOGIES, INC.**</u>

113. Counterclaim Plaintiff Information Technologies, Inc. hereby incorporates paragraphs 1-112 above as if fully set forth herein.

114. Counterclaim Defendant REJIS has engaged in anticompetitive conduct to maintain its monopoly power in violation of § 416.031.2 R.S.Mo.

115. Counterclaim Defendant REJIS's actions as alleged herein constitute anticompetitive conduct and unlawful monopoly maintenance in violation of § 416.031.2 R.S.Mo..

116. Counterclaim Defendant REJIS possesses monopoly power in the relevant market or markets, and willfully maintains such monopoly power.

117. Counterclaim Defendant REJIS's actions have the purpose and effect of excluding competition from the market for the exchange, interchange and processing of itemized criminal justice information statistics and records pertaining to crime, criminal data and the courts, and the acquisition, collection, classification, preservation and exchange of said itemized information in conjunction with information systems of authorized criminal justice agencies, by actually foreclosing competition in the market and preventing entry.

118. Counterclaim Defendant REJIS's continued anticompetitive conduct and maintenance of its monopoly power is not the result of super skill, business acumen, or historic accident.

119. As a direct and foreseeable result of Counterclaim Defendant REJIS's monopoly maintenance, Counterclaim Plaintiff has suffered damages in an amount to be proved at trial.

## COUNT V

### ATTEMPTED MONOPOLIZATION IN VIOLATION OF § 416.031.2 R.S.Mo. BROUGHT BY COUNTERCLAIM PLAINTIFF INFORMATION TECHNOLOGIES, INC.

120. Counterclaim Plaintiff Information Technologies, Inc. hereby incorporates paragraphs 1-119 above as if fully set forth herein.

121. Counterclaim Defendant REJIS has engaged in anticompetitive conduct to attempt to monopolize in violation of § 416.031.2 R.S.Mo.

122. As an alternative to Count IV, Counterclaim Defendant REJIS's actions as alleged herein constitute an unlawful attempt to monopolize in violation of § 416.031.2 R.S.Mo..

123. Specifically, Counterclaim Defendant REJIS's actions constitute a willful and intentional attempt to monopolize the market for the exchange, interchange and processing of itemized criminal justice information statistics and records pertaining to crime, criminal data and the courts, and the acquisition, collection, classification, preservation and exchange of said itemized information in conjunction with information systems of authorized criminal justice agencies, by excluding competition from the market for the exchange, interchange and processing of itemized criminal justice information statistics and records pertaining to crime, criminal data and the courts, and the acquisition, collection, classification, preservation and exchange of said itemized information in conjunction with information systems of authorized criminal justice agencies.

124. Counterclaim Defendant REJIS's attempt to monopolize has a dangerous probability of success.

125. As a direct and foreseeable result of Counterclaim Defendant REJIS's attempt to monopolize, Counterclaim Plaintiff Information Technologies, Inc. has suffered damages in an amount to be proved at trial.

## COUNT VI

### REQUEST FOR INJUNCTIVE RELIEF BROUGHT BY
### COUNTERCLAIM PLAINTIFF INFORMATION TECHNOLOGIES, INC.
### PURSUANT TO 15 U.S.C. § 26

126. Counterclaim Plaintiff Information Technologies, Inc. hereby incorporates paragraphs 1-125 above as if fully set forth herein.

127. Counterclaim Plaintiff ITI has suffered an irreparable injury.

128. Remedies available at law, such as monetary damages, are inadequate to compensate for that injury.

129. Considering the balance of hardships between the Counterclaim Plaintiff ITI and Counterclaim Defendant REJIS, a remedy in equity is warranted.

130. The public interest would not be disserved by a permanent injunction.

### PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiff Information Technologies, Inc. prays that this Court enter judgment on Count I of its Counterclaims as follows:

A.   Declaring that Counterclaim Defendant Regional Justice Information Services Commission is no longer a "public entity" as used in § 537.600 R.S.Mo.;

B.   Declaring that Counterclaim Defendant Regional Justice Information Services Commission is no longer an entity of the sovereign, the State of Missouri;

C.   Declaring that Counterclaim Defendant Regional Justice Information Services Commission no longer operates under the police power of the state of Missouri;

D.   Declaring that Counterclaim Defendant Regional Justice Information Services Commission no longer operates under the police power of the state of Missouri in the interest of the public health, safety and welfare;

E.      Declaring that Counterclaim Defendant Regional Justice Information Services Commission is no longer protected by sovereign immunity;

F.      Declaring the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

G.      Granting Counterclaim Plaintiff Information Technologies, Inc. its costs and attorney's fees incurred herein; and

H.      Granting such other and further relief as this Court deems equitable and just under the circumstances.

AND, WHEREFORE, Counterclaim Plaintiff Information Technologies, Inc. prays that this Court enter judgment on Counts II-VI of its Counterclaims as follows:

A.      Grant judgment in favor of Counterclaim Plaintiff Information Technologies, Inc. and against Counterclaim Defendant REJIS;

B.      Award Counterclaim Plaintiff Information Technologies, Inc. an appropriate amount in monetary damages as determined at trial, including pre- and post-judgment interest;

C.      Direct Counterclaim Defendant REJIS to pay to Counterclaim Plaintiff Information Technologies, Inc. threefold the damages determined to have been sustained by Counterclaim Plaintiff Information Technologies, Inc. as a result of the violations set forth above, reasonable attorneys' fees and costs;

D.      Permanently enjoin Counterclaim Defendant REJIS from violating section 50.660 R.S.Mo. with respect to competitive bidding;

E.      Permanently enjoin Counterclaim Defendant REJIS from violating section 34.073.1 R.S.Mo. with respect to preference for Missouri entities in contracting;

   F.  Permanently enjoin Counterclaim Defendant REJIS from refusing to provide vendors such as Counterclaim Plaintiff ITI from interfacing with Counterclaim Defendant REJIS's products and services; and

   G.  Grant Counterclaim Plaintiff ITI such other relief as is just and appropriate.

        Respectfully submitted,

        HESSE MARTONE, P.C.

     By:   */s/ Andrew Martone*
       Andrew Martone, #37382
       Markus Cicka, #42192
       13354 Manchester Road, Suite 100
       St. Louis, MO 63131
       (314) 862-0300 – Telephone
       (314) 862-7010 – Facsimile
       andymartone@hessemartone.com
       markuscicka@hessemartone.com

       *Attorneys for Defendants/Counterclaim Plaintiff*
       *Information Technologies, Inc.*

## CERTIFICATE OF SERVICE

   I hereby certify that on the 25th day of May, 2016, the foregoing was filed electronically with the Clerk of the Court to be served by operations of the Court's electronic filing system upon the following:

   Mark H. Levison, # 29976
   Carolyn M. Kopsky, # 36049
   Lashly & Baer, P.C.
   714 Locust Street
   St. Louis, MO  63101-1699
   Telephone: 314-621-2939
   Facsimile: 314- 621-6844
   mlevison@lashlybaer.com
   cmkopsky@lashlybaer.com

   *Attorneys for Plaintiff*

        */s/ Andrew J. Martone*